## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   **KAYLA AVERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIV-16-** 1046-M |
| | ) | |
| 1.   **LINDSEY MANAGEMENT** | ) | |
| **CO., INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Kayla Avers, and for her Complaint against the Defendant, Lindsey Management Co., Inc., alleges and states as follows:

### PARTIES

1.     Plaintiff, Kayla Avers ("Plaintiff"), is an adult female resident of Lincoln County.

2.     Defendant, Lindsey Management Co., Inc. ("Defendant"), is a corporation or entity doing business in and around Payne County, Oklahoma.

### JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on the following claims: (a) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended; (b) pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Pregnancy Discrimination Act of 1978; (c) disability discrimination in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (d) retaliation for and interference with Plaintiff's use of medical leave and exercise of her rights under the Family and Medical Leave Act ("FMLA"); (e) violations of the Fair Labor Standards Act ("FLSA") for failure to pay wages due to Plaintiff; and (f) violations of Okla. Stat. tit. 40 §165.1, *et*

1

*seq.*, for failure to pay wages due to Plaintiff.

4.      Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5.      Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 9, 2016.  Plaintiff received her Dismissal and Notice of Rights letter from the EEOC by mail dated on or about August 31, 2016 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of his notice of right to sue.

6.      The Defendant is located and can be served in Payne County and all acts complained of occurred in or around Payne County.  Payne County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7.      Plaintiff initially began her employment with Defendant in or around July 2011 as a Senior Leasing Consultant at Defendant's apartment complex, The Links I, in Stillwater, Oklahoma.

8.      Plaintiff continued in this position until in or around September 2013, at which time she was offered a promotion to the position of Community Director at another of Defendant's apartment complexes, The Greens f/k/a The Links II, also located in Stillwater, Oklahoma.

2

9.      When Plaintiff began working as the Community Director, in or around September 2013, she reported to Regional Managers Joe and Kathy Deases.  However, in or around late-2014, Rob Stanley ("Stanley") became the Regional Manager, and Plaintiff began reporting to Stanley at that time.

10.     Throughout her employment, Plaintiff satisfactorily performed her job.

11.     In addition to being promoted in 2013, Plaintiff consistently received satisfactory, if not better, results on monthly audits conducted in connection with the operation of the complex where she worked.

12.     Plaintiff also regularly received performance-based bonuses.  And, she received the President's Award in or around December 2014 for having met 100% of her performance goals.

13.     Despite her good work performance and the lack of any prior discipline, Plaintiff was written up on or about July 8, 2015, just one week after she returned from maternity leave.

14.     Plaintiff was then fired less than one week later, on or about July 14, 2015.

15.     Particularly, Plaintiff first learned she was pregnant in or around late-Summer 2014, prior to Stanley starting as the Regional Manager.  After Stanley began working as the Regional Manager (in or around late-2014), Plaintiff informed him of her pregnancy and that she was experiencing complications.

16.     During her pregnancy, Plaintiff began suffering from high blood pressure, substantially impacting her ability to perform one or more major life activities, including, but not limited to lifting and engaging in other physical activities.  Her condition also impacted her internal bodily processes, including, but not limited to her circulatory system.  At all times though, Plaintiff could perform the essential functions of her job with or without

3

reasonable accommodations.

17.     Plaintiff told Stanley that her pregnancy was high-risk, that she was suffering from high blood pressure, and that her physician placed her on lifting and other restrictions. Despite this, Stanley constantly pressured Plaintiff to perform work beyond her physicians' restrictions, including *inter alia* maintenance work outside the scope of her job as the Community Director.

18.     From in or around September 2014 through January 2015, there was not a maintenance staff person employed at The Greens, other than for a very brief period.

19.     During this time, Plaintiff repeatedly asked Stanley for assistance to complete various maintenance tasks, such as lifting and installing large appliances.  However, Stanley failed to accommodate Plaintiff's requests.

20.     Instead, Stanley told Plaintiff the complex was her property and that she needed to figure out what to do.  Yet, when no qualified applicants applied for the maintenance staff position, Stanley refused to allow Plaintiff to obtain help from the maintenance staff at Defendant's other properties.  This was so despite the fact that said properties had more than one maintenance person per location.

21.     On or about April 4, 2015, Plaintiff's physician ordered she be on complete bed rest.  In fact, Plaintiff's physician completed FMLA paperwork stating, Plaintiff "must be off work completely" beginning April 4, 2015.  However, Stanley continued pressuring Plaintiff to work.

22.     On April 15, 2015, Plaintiff's son was born.  She was then on medical leave until on or about June 29, 2015.

23.     Just one week after Plaintiff's return to work, on or about July 8, 2015, Stanley issued Plaintiff a Counseling Memo, claiming, for the first time, that her work performance

was deficient.

24.     The claimed reasons for the Counseling Memo were pretext.

25.     By way of example, the Counseling Memo accused Plaintiff of failing to follow the pet policy, stating she had unauthorized pets living in her apartment.  However, Plaintiff obtained permission to have her pet, a dog, in her apartment.  And, male Community Directors reporting to Stanley, including, but not limited to Cody Chitwood, have had pets living in their apartments without permission and have not been disciplined.

26.     The same day Stanley issued Plaintiff the Counseling Memo, he also made harassing and offensive comments about Plaintiff having a newborn.  That is, that day (on or about July 8, 2015), Stanley conducted a walk-through of the apartment in which Plaintiff lived.  Having just recently given birth to her son, Plaintiff had various baby items in her apartment.  And, in the midst of the walk-through, Stanley snidely commented that if Plaintiff didn't have a newborn, her apartment would be cleaner.

27.     Stanley then fired Plaintiff less than one week later, on or about July 14, 2015. And, though Plaintiff was due a bonus in the amount of approximately $10,000 for having met occupancy goals, Plaintiff was denied payment for the same.

28.     As the basis for her termination, Stanley accused Plaintiff of refusing to allow an air conditioner technician to fix the air conditioning unit in the fitness center.

29.     However, the stated basis for Plaintiff's termination is pretext.  At no time, did Plaintiff refuse the technician access to the unit.  Moreover, Defendant has a progressive disciplinary policy, which was not followed.  And, male employees supervised by Stanley, including, but not limited to, Maintenance Manager Dylan Vowell, have had actual performance deficiencies and have not been fired.

30.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered

injuries described below.

## COUNT I: Gender Discrimination

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

31.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination.

32.     Plaintiff is entitled to relief under Title VII for gender discrimination because, Plaintiff is female; she was qualified for her job; she was terminated; and her job was not eliminated.

33.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

34.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: Pregnancy Discrimination

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35.     The matters alleged above constitute violations of the Pregnancy Discrimination Act of 1978.

36.     Plaintiff is entitled to relief under the pregnancy discrimination act because she was pregnant, she was qualified for her job; she suffered an adverse employment action, and her position was not eliminated.

37.     Plaintiff is further entitled to relief under the Pregnancy Discrimination Act because Defendant refused to accommodate Plaintiff's pregnancy related medical restrictions.

6

38.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

39.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT III: Disability Discrimination

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

40.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

41.     More specifically, Plaintiff was a qualified individual with a disability, in that, she suffered from a physical impairment (i.e., pre-eclampsia, characterized by *inter alia* high blood pressure) which substantially limited her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disability impacts one or more of her internal bodily processes, as shown herein.

42.     Despite said impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

43.     Defendant also failed to provide Plaintiff with reasonable accommodations.

44.     Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

45.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

46.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT IV:  FMLA Interference and Retaliation

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

47.     The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

48.     Plaintiff was entitled to medical leave because she worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

49.     Plaintiff suffered from a serious health condition (i.e., pregnancy and pre-eclampsia, characterized by *inter alia* high blood pressure), requiring continuing treatment by a health care provider.

50.     Defendant interfered with Plaintiff's rights under the FMLA by *inter alia* pressuring Plaintiff to perform work during her FMLA leave.

51.     Defendant also retaliated against Plaintiff for her use of FMLA leave by firing her shortly after her return from FMLA leave.  That is, Plaintiff engaged in protected conduct by taking FMLA leave, she suffered an adverse employment action, and based on the close temporal proximity, a causal connection exists between Plaintiff engaging in the protected conduct and the adverse action taken.

52.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

53.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income,

past and future, liquidated damages, based on the willfulness of Defendant's violation of the FMLA, attorneys' fees and costs.

### COUNT V: Violation of the FLSA

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

54.     The acts described above constitute violations of the Fair Labor Standards Act for failure to pay wages.

55.     As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff suffered a loss of income, in the form of unpaid bonuses and other damages.  As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

56.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA law.  Defendant knew, or showed reckless disregard for the fact that their compensation practices were in violation of the law.

### COUNT VI: Violation of Okla. Stat. tit. 40 § 165.3

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

57.     The acts described above constitute a failure to pay wages in violation of Oklahoma state law.

58.     As such, Plaintiff is entitled to recover all damages available under state law.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in favor of the Plaintiff and against the Defendant and award compensatory damages, punitive damages, liquidated damages, together with any appropriate equitable relief, pre- and post-

judgment interest, costs and attorney's fees.

Respectfully submitted this <u>8th</u> day of September, 2016.

s/Jana B. Leonard
**JANA B. LEONARD, OBA # 17844**
**SHANNON C. HAUPT, OBA # 18922**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**
